Argued 29 November; decided 19 December, 1898.

## MULTNOMAH COUNTY *v.* CITY RAILWAY CO.

[55 Pac. 441.]

MUNICIPAL CORPORATIONS—CONSTRUCTION OF STATUTE.—The power conferred
by the legislature upon the Bridge Committee of the City of Portland to enter
into such contracts as it might deem just with any line of street railway
operating across the bridges contemplated by the act if it should find it neces-
sary to do so in order to effect the agreement of purchase or lease, Laws, 1895,
p. 421, § 15, authorized the committee to enter into an original contract with
a street railway company for the use of the bridge. The statute was not
intended to restrict the committee to negotiations for the cancellation of
existing rights.

From Multnomah:   E. D. SHATTUCK, Judge.

Action at law by Multnomah County against the City
and Suburban Railway Company, wherein the defendant
had judgment.

AFFIRMED.

For appellant there was a brief over the names of *Fen-
ton, Bronaugh & Muir*, and *Dolph, Nixon & Dolph*, with an
oral argument by *Messrs. Wm. D. Fenton* and *Chester V.
Dolph*.

For respondent there was a brief over the name of *Dolph, Mallory & Simon*, with an oral argument by *Mr. Rufus Mallory*.

MR. JUSTICE BEAN delivered the opinion.

This is an action brought by the County of Multnomah to recover the sum of $1,200, alleged to be due from the defendant, the City and Suburban Railway Company, for the use of Morrison Street Bridge, in the City of Portland, for the months of February and March, 1896.   The facts out of which the controversy arose are as follows :   The legislature of 1895 appointed a "Bridge Committee of the City of Portland," with authority to procure for it, by purchase or condemnation, the Morrison Street Bridge, a structure owned by the Willamette Iron Bridge Company; the Stark Street Ferry, owned by private parties ; and the lease of the upper deck of what is known as the "Steel Bridge," owned by the Oregon Railway & Navigation Company, for the purpose of making them free for the use of the general public :   Laws, 1895, p. 421.   Section 15 of the act provides that "the bridge committee, in the name of said city, is hereby authorized, in case it can secure the said Morrison Street Bridge, or the upper deck of the said Steel Bridge, or the Stark Street Ferry, by agreement, and finds it necessary so to do in order to effect the agreement of purchase or lease, as the case may be, to enter into such contracts as it may deem just with any line or lines of street railway operated or to be operated over and across the said bridges or the said ferry."   It is further provided that after the bridges and ferry shall be so acquired, and are ready for use, the possession and control thereof shall be transferred and delivered to the County Court of Multnomah County, which shall thereafter maintain and operate the same,

with power, among other things, "to establish rates for the use thereof by the street railway company, and other companies or corporations not entitled to the free use of the same." In pursuance of the power conferred upon it, the bridge committee, on July 3, 1895, purchased Morrison Street Bridge for the city; but the defendant, being at the time the owner of about seventy-five per cent. of the stock of the bridge company, and having an exclusive right to the use of the bridge for street railway purposes, it was found necessary to enter into an agreement with it by the terms of which it was to be permitted to use the bridge as part of its street railway system for the term of twenty years, at the monthly rental of $150. The county court, however, upon assuming possession and control of the bridge, refused to recognize the validity of such contract, and made an order fixing the amount to be paid by the defendant for such use at $750 per month, which the defendant refused to pay, and hence this action.

Waiving all questions of procedure, the real controversy between the parties to this litigation is whether the bridge committee had power to make the contract with the defendant company referred to; and this depends upon the construction to be given to section 15 of the act creating and defining the duties of such committee. The language of the section is undoubtedly broad enough to authorize such a contract, for it gives to the committee power, if it can secure the bridge by agreement, and finds it necessary in order to effect such agreement, "to enter into such contracts as it may deem just with any line, or lines of street railway operated, or to be operated, over and across the said bridge." But the contention for the plaintiff is that the purpose of the section was to enable the bridge committee, if it could agree with the owner of the bridge for its purchase, to deal

directly with the street railway company for the cancellation of any lease or franchise which it might have for the use of the bridge, so that an unincumbered title should pass to the city and under the control of the county court, and that the language of the statute should be so construed. But we are unable to concur in this construction. It seems to us that it would not only be contrary to the langauge of the section, but to its evident object. The general purpose of the act, of which it forms a part, was to enable the City of Portland to make the use of all the public bridges and ferries over and across the Willamette River, within the corporate limits, free to the general public. At that time the city owned the Madison and Burnside Street bridges and the Albina Ferry, which were free, but the other bridges and ferry were owned by private parties, who charged and collected tolls for the use thereof. To enable the city to relieve itself and its citizens from this condition of affairs, the act in question was passed, authorizing the committee named therein to procure the Morrison Street Bridge and Stark Street Ferry for the city, by purchase, if that could be done, and, if not, by condemnation proceedings, and to lease the upper deck of the Steel Bridge. At this time the defendant street railway company was the owner of about seventy-five per cent. of the capital stock of the corporation owning the Morrison Street Bridge, and had the exclusive right to use such bridge, and also the upper deck of the Steel Bridge, for street railway purposes. This condition of affairs was, no doubt, known to the legislature, and it was, therefore, aware that the interests of the defendant in the two bridges were such as practically to enable it to prevent the purchase of the one, or the lease of the other, without its consent. With that fact before it, the legislature evidently intended to authorize the committee, in case it should be otherwise unable to

secure the Morrison Street Bridge, or a lease of the upper deck of the Steel Bridge, to enter into such contract with the defendant as the committee might deem just.   Such were the objects of the act, and such the powers conferred upon the committee.   It is true the committee was not authorized to lease any property which it might acquire, but it was empowered to make such contracts with street railway companies as it might deem just, if necessary to enable it to acquire such property by purchase.   Such being the construction we put upon the act, it necessarily follows that the contract in question was within the power of the bridge committee ; and, as that is the only question for determination, the judgment of the court below must be affiimed, and it is so ordered.

Affirmed.